**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BETH LYNN BOYSZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 03cv1526 |
| | ) | |
| JOHN W. THOMPSON, individually and | ) | |
| in his capacity as Superintendent of the City | ) | |
| of Pittsburgh Public Schools and the | ) | |
| PITTSBURGH BOARD OF PUBLIC | ) | |
| EDUCATION and the CITY OF | ) | |
| PITTSBURGH SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

October 5, 2005

Presently before the Court is the MOTION PURSUANT TO FED.R.CIV.P. 50(A) FOR JUDGMENT IN FAVOR OF DEFENDANTS AS A MATTER OF LAW filed by Defendants, and the Plaintiff's response in opposition. For the reasons that follow, the Motion will be granted.

**Discussion**

Section 1983 of title 42 of the United States Code does not create substantive rights, but rather provides a remedy for the violation of rights created by federal law. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him or her of a federal right; and (2) the person who deprived him or her of that right acted under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Thus, if there is no violation of a constitutional right, the claim cannot succeed.

1

Plaintiff alleges that the disciplinary action taken against her by the Defendants (i) violated her Procedural Due Process rights under the United States Constitution when Defendants suspended her without a School Board hearing; (ii) violated her Equal Protection rights in that the discipline imposed upon Plaintiff exceeded that meted to others in similar situations; and (iii) violated her First Amendment rights because the discipline was in retaliation for her speech and association.  Plaintiff's claims will be addressed seriatim.

**A.     Procedural Due Process**

The Fourteenth Amendment forbids state actors from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. Plaintiff alleges that Defendants violated her procedural due process rights and deprived her of her property rights when they suspended her without pay without first being afforded a hearing before the School Board.

Due process requires that adequate procedures accompany government action which potentially infringes upon a property interest. The first issue in a procedural due process inquiry is whether a due process interest was at stake.  Only upon a finding of a protected interest does the court inquire into whether the deprivation was without due process. *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000); *Cospito v. Heckler,* 742 F.2d 72, 80 (3d Cir. 1984).

It is undisputed that, as a tenured teacher with the City of Pittsburgh School District, Plaintiff had a protected property interest in her employment.  Thus, the Court turns its attention to whether Plaintiff's suspension without a hearing was without due process.  "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes

that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin,* 227 F.3d at 116.  The United States Supreme Court has ruled that "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstance."  *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (*quoting Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895 (1961)).  Rather, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Gilbert*, 520 U.S. at 930 (*quoting Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin*, 227 F.3d at 116 (citing *McDaniels v. Flick,* 59 F.3d 446, 460 (3d Cir. 1995)).  Further, our Third Circuit Court of Appeals has held that where grievance and arbitration procedures are in place, those procedures satisfy due process requirements "even if the hearing conducted by the Employer . . . [was] inherently biased." *Dykes v. SEPTA*, 68 F.3d 1564, (3d Cir. 1995) *(quoting Jackson v. Temple University*, 721 F.2d 931 (3d Cir. 1983)).

It is black letter law that a labor union serves as the exclusive representative of its members in all matters related to hours, wages and terms and conditions of employment, particularly those set forth in a collective bargaining agreement.  *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983).  Plaintiff was a member of the Pittsburgh Federation of Teachers (the "Union"), the teachers union which has a collective bargaining agreement with the Pittsburgh Board of Public Education.  That labor agreement contains a final and binding grievance-arbitration procedure, as mandated by Act 195, commonly known as the Public Employee Relations Act ("PERA").  Pa. Stat. Ann., tit. 43, § 1101.903.

It is a fundamental principle that "a collective bargaining agreement constitutes a contract.  Accordingly, any rights and remedies possessed by the union and the employer, as parties to the agreement, and by the employee, as a third-party beneficiary thereof, ultimately derive primarily from the language of the agreement itself."  *Kozura v. Tulpehocken Area Sch. Dist.*, 791 A.2d 1169,1173 (Pa. 2002).

The CBA entered into between the Union and the Pittsburgh Board of Public Education defines "grievance" in pertinent part as follows:

A grievance is a difference concerning:

1.  a deviation from, or an interpretation or an application of, an administration-approved practice, a system-wide established practice, or a Board-adopted policy, relating directly to those working conditions of teachers that are proper subjects for bargaining under Act 195; or

2.  an arbitrary or capricious change in any of the same; or

3  compliance, interpretation, or application of any existing law, rule, regulation or policy which relates to or involves the professional employee(s) in the exercise of his/her or their assigned duties; or

4.  a violation, interpretation, application, or meaning of any provision of this Agreement.

Part C, Personnel Procedures - Article 27, Grievances and Arbitration Procedures.

Further, Article 27 of the CBA establishes a four-step grievance procedure which provides for the filing of a grievance with the employer (Level One)[1] through the submission of the dispute to

---

[1]      FIRST LEVEL
2.      A grievance shall be presented in writing on a form mutually agreed upon by the Federation and the Board, through or by a Federation representative to the principal, either within ten (10) school days after

arbitration for a hearing (Level 4).  In addition, and relevant to this litigation, the CBA provides

that before differences become formalized grievances, the parties should engage in discussions

"to resolve any prospective grievance."[2]

      The Procedures section of the CBA concludes with the following paragraph:

> 23.    Nothing contained in this grievance procedure is
> intended to restrict or limit the rights of any
> individual as provided under Section 606 of Act
> 195, effective October 21, 1970.

Part C, Personnel Procedures - Article 27, Grievances and Arbitration Procedures, at ¶ 23.

      Also extremely relevant to this discussion is the "election of remedies" provision of

Section 11-1133 of the Public School Code, which provides, in pertinent part, as follows:

> Professional employees shall have the right to file a
> grievance under the collective bargaining agreement
> or request a hearing pursuant to § 1121 through
> 1132, <u>but not both.</u>

Pa. Stat. Ann. tit. 24 § 11-1133 (emphasis added).  Section 11-1133 applies to both teacher

termination and teacher suspension proceedings.  *Altoona Area Vo-Tech Educ. Assn v. Altoona*

---

> the circumstances giving rise to the grievance or
> within ten (10) school days after the date when the
> grievant could reasonably be expected to be aware
> of the circumstances giving rise to the grievance.

Part C, Personnel Procedures - Article 27, Grievances and Arbitration Procedures.

[2]    1.    A sincere attempt should be made to resolve any prospective grievance by
discussion between the prospective grievant or the Federation building
representative or some other Federation representatives and the principal
before differences become formalized grievances.

Part C, Personnel Procedures - Article 27, Grievances and Arbitration Procedures.

*Area Vo-Tech*, 559 A.2d 974 (Pa. Commw.), *alloc. denied*, 575 A.2d 569 (Pa. 1989).  In

*Pederson v. South Williamsport Area School District*, 677 F.2d 312 (3d Cir.), *cert. denied*, 459

U.S. 972 (1982), the Court of Appeals for the Third Circuit has held that the grievance provisions

in a collective bargaining agreement between a school district and a teachers union were a valid

alternative to a Board hearing and fully satisfied the due process requirements of the Fourth

Amendment.

Plaintiff argues that she never formally filed a grievance and, thus, she was entitled to a

pre-suspension hearing before the School Board.  In response, Defendants vigorously argue that

in accepting union representation and, more importantly, in accepting the settlement agreement,

which was initially proposed by her Union representative and Union counsel to the School

District, Plaintiff clearly elected to engage in "prospective grievance" discussions as permitted by

the CBA and, thus, had no right to a Board hearing.  *See* Article 27, Procedure 1.

In further support of their position, Defendants argue that "a 'grievance' does not have to

be in writing.  For Plaintiff to claim that the grievance procedures were never invoked would

ignore the language and intent of the Agreement and is contrary to the record evidence of the

[Union's] persistent and active representation of Plaintiff from April to August, 2003."  Defs'

Mot., at 6-7.  Defendants contend that a "grievance" as defined by the CBA, is simply a dispute

or "difference concerning (1) a deviation from, or an interpretation of an application of, an

administration-approved practice, a system-wide established practice, or a Board-adopted policy,

relating directly to those working conditions of teachers that are proper subjects for bargaining

under Act 195; . . . ."

6

Based on the record evidence presented at this trial, and viewed in the light most favorable to Plaintiff, it appears clear to the Court that Plaintiff, through her Union, engaged in prospective grievance discussions with the School District in accordance with the CBA, which resulted in the execution of a Settlement Agreement by the parties in August, 2003.  Both Jody Spolar and Vicki Beatty testified that the majority of employment grievances are never formally filed in writing; rather the majority of these disputes/grievances are handled under CBA Step 1 negotiations.

The record is clear that Plaintiff, upon being notified that she was to be disciplined for her actions while administering a diagnostic test, immediately involved and/or accepted the involvement of the representatives of her Union, the Pittsburgh Federation of Teachers, her exclusive bargaining agent, who were involved in each and every step of the disciplinary process. The Union was involved on behalf of Plaintiff from the very first meeting in Principal Folino's office on Tuesday, April 8, 2003, at which the Union's building representative, Arlene Fenster, was present.  Immediately thereafter, Nina Esposito Visgitis, the union representative, was called to Horace Mann Elementary School to discuss Plaintiff's alleged conduct. On that day, Ms. Esposito Visgitis and Plaintiff spoke privately about the allegations.  On April 16, 2003, Ms. Esposito Visgitis, along with Plaintiff, attended the initial Critical meeting with Ms. Spolar and others, at which time Plaintiff gave a general overview of the testing situation and explained why she had used post-its.

On May 2, 2003, Ms. Esposito Visgitis and Plaintiff, attended a second Critical Incident meeting with Ms. Spolar and others, at which time the actual test booklets were brought to the meeting and examined by both Ms. Esposito Visgitis and Plaintiff.  On May 13, 2003, Ms.

Esposito Visgitis wrote to Steve Jordan, the attorney for the Union, and apprised him of the situation.  Thereafter, Mr. Jordan met with Plaintiff and Ms. Esposito Visgitis to discuss possible resolution of the matter and negotiated with the School District on Plaintiff's behalf.  Initially, Mr. Jordan proposed to the School District that Plaintiff receive a one-semester suspension, but such proposal was rejected as the School District was contemplating a one-year suspension.  However, after further negotiations over the next two months, the School District agreed to a one-semester suspension provided that "the parties agree that this settlement is based upon the facts of this case and nothing contained herein shall limit the School District's ability to implement other disciplinary outcomes in other cases . . . ."

On August 10, 2003, Plaintiff executed a Settlement Agreement in which she agreed to "be suspended without pay for the first semester of the 2003-2004 school year."  Attached to the Settlement Agreement, however, was a letter from Plaintiff to her attorney Steve Jordan in which Plaintiff advised him that "she did not agree with the punishment offered . . . But I am forced to accept."  The Board President and Elected Board Members were copied on the letter.

Vicki Beatty, attorney for the School District, testified that immediately upon receipt of the Settlement Agreement and the appended letter from Plaintiff, she telephoned Steve Jordan and inquired whether they had an agreement.  She was assured during that conversation that "they had a deal."  Thereafter, the Settlement Agreement was executed by Nina Esposito Visgitis on behalf of the Union and Dr. Thompson, on behalf of the School District.

Interestingly, at no time prior to her execution of the Settlement Agreement did Plaintiff ever repudiate her representation by the Union nor did she ever request or demand a hearing.  Plaintiff now argues that "both state law and the applicable CBA" guarantee Plaintiff's right to a

8

board hearing.  However, as stated earlier, pursuant to Section 11-1133 of the School Code, "a professional employe shall the right to file a grievance under the collective bargaining agreement or request a hearing . . . <u>but not both</u>."  (emphasis added).

Case law provides that settlement of grievances short of arbitration is to be fostered as a peaceful and efficient means of resolving workplace disputes and unions are typically entitled to reach such agreements on behalf of their members, even over their members objections.  *Bolden v. SEPTA*, 953 F.2d 807, 825-29 (3d Cir. 1991), *cert. denied*, 504 U.S. 943 (1992).  In fact, our appellate court, as well as Pennsylvania state courts, has recognized that public employees whose rights are settled under a labor contract do not have a right to a "second bite" of the Due Process apple by also proceeding in federal court.  Rather, if the employee proves that the union breached its duty of fair representation, the employee may proceed in state court.  *See Bolden,* 953 F.2d at 829; *Cady v. Twin Rivers Towing Co.*, 486 F.2d 13335, 1338 (3d Cir. 1973); *Dorfman v. PSSU - Local 668*, 752 A.2d 933 (Pa. Commw. 2000); *Moshannon Valley School District v. PLRB*, 597 A.2d 299 (Pa. Commw. 1991), *alloc. denied*, 609 A.2d 170 (Pa. 1992) (settlement short of arbitration of teacher dismissal was binding and conclusive, with no subsequent Board hearing required or permitted).

The CBA at issue clearly provided for "discussions" of  "any prospective grievance . . . before differences become formalized grievances."   The evidence at trial establishes that Plaintiff, assisted by Union representatives, engaged in these "discussions," which culminated in the execution of a Settlement Agreement by the parties in August 2003.

For these reasons, the Court finds and rules that the administrative process in place "appears to provide due process," that Plaintiff actively engaged in prospective grievance

9

discussions pursuant to Step 1 of the CBA, and thus, pursuant to § 11-1133, Plaintiff had no right

to a Board hearing.   Further, because there is no violation of a constitutional right, Plaintiff's due

process claim cannot succeed and Defendants are entitled to judgment as a matter of law.

B.      **Equal Protection and Retaliation**

Plaintiff's remaining two claims both challenge the disciplinary action taken against her

by Defendants.  Clearly, Plaintiff's claim of an Equal Protection violation for unequally harsh

discipline is inextricably intertwined with the overall grievance process and Union settlement.

Likewise, Plaintiff's claim that she received a "grossly disproportionate" discipline as a result of

statements she made or associations she may have had with a School Board member, is also

intertwined with the grievance process and Union settlement.  Interestingly, Plaintiff's attorney

told the School District, in writing, that "her claims" were within the Union's duty of

representation.  Therefore, they are necessarily related to the terms of her employment as

controlled by the labor agreement.

In *Dykes,* the court of appeals held that the employee's assertions that a drug testing

policy violated the Fourth Amendment were to be resolved under the labor contract, in that all

reasonableness of such policies is routinely a matter dealt with in such proceedings.  *Dykes,* 68

F.3d at 1570.  Like the Fourth Amendment claim in *Dykes*, Plaintiff's claims of violations of the

Equal Protection Clause and the First Amendment, arise under the labor contract relationship.

Plaintiff, through her Union, entered into an agreement resolving the disciplinary action against

her.  As stated *supra,* settlements (even of Constitutional claims) arrived at through a labor union

10

are binding, absent proof of a breach of the union's duty of fair representation.  Accordingly, Plaintiff cannot now claim that her Constitutional rights were violated.

For these reasons, Defendants' Motion for Judgment as a Matter of Law will be granted as to Plaintiff's claims of violations of the Equal Protection Clause and the First Amendment.


## Conclusion

The School Code and the CBA provided a choice of "processes" for Plaintiff - she had the right to file a grievance under her CBA or request a hearing - but not both.  Plaintiff elected to utilize her union and engage in CBA Step 1 "prospective grievance" discussions which culminated in a negotiated settlement of the matter.  In August 2003, Plaintiff signed a valid Settlement Agreement which resolved the issues surrounding her discipline.  Thereafter, she had no further right to a hearing on the matter.  She cannot now claim that due process was not afforded to her or that her Constitutional rights were otherwise violated.

An appropriate Order follows.


McVerry, J.

11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BETH LYNN BOYSZA,                              )
                                               )
   Plaintiff,                   )
                                               )
   v.                            )  02: 03cv1526
                                               )
JOHN W. THOMPSON, individually and             )
in his capacity as Superintendent of the City )
of Pittsburgh Public Schools and the           )
PITTSBURGH BOARD OF PUBLIC                     )
EDUCATION and the CITY OF                      )
PITTSBURGH SCHOOL DISTRICT,                    )
                                               )
   Defendants.                   )

**ORDER OF COURT**

   AND NOW, this 5th day of October, 2005, in accordance with the foregoing

Memorandum Opinion, it is hereby ORDERED, ADJUDGED AND DECREED that the Motion

Pursuant to Fed.R.Civ.P. 50(a) for Judgment In favor of Defendants as a Matter of Law is hereby

GRANTED.

   Judgment as a matter of law is hereby entered against Plaintiff, and in favor of all

Defendants, on all Counts and claims of the Plaintiff.  This civil action is dismissed with

prejudice forthwith.

            BY THE COURT:


            s/  Terrence F. McVerry
            United States District Court Judge

cc:    Adrian N. Roe, Esquire
Kenneth J. Witzel, Esquire
Watkins Dulac & Roe PC
email:  aroe@watkinsdulac.com

Mark R. Hornak, Esquire
Buchanan Ingersoll PC
email:  Hornakmr@bipc.com

Gregory A. Miller, Esquire
Buchanan Ingersoll PC
millerga@bipc.com

Lisa M. Passarello, Esquire
Buchanan Ingersoll PC
passsarellolm@bipc.com